1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

       Plaintiff

       v.

KENDLE RASHEN HAWKINS,

       Defendant.

CASE NO. CR21-5213RSM

ORDER DENYING MOTION TO
SUPPRESS EVIDENCE

      This matter comes before the Court on Defendant Hawkins's Motion to suppress evidence recovered by law enforcement pursuant to a Search Warrant and Pen-Trap Order that was authorized on May 20, 2021, and a subsequent Search Warrant that was authorized on June 14, 2021.  Dkt. #39.  Mr. Hawkins has been charged in a Superseding Indictment with Possession of Fentanyl with Intent to Distribute and Felon in Possession of a Firearm.  Dkt. #44.  Although his is a stand-alone indictment, this case is related to those brought against approximately 39 other Defendants under 13 different cause numbers.  *See* Dkts. #21, 31, and 34.

      In 2019, the FBI and Seattle Police Department began investigating a drug trafficking organization ("DTO") allegedly controlled by an individual named Michael Walker within the Western District of Washington.  On May 20, 2021, FBI Special Agent Shawna McCann applied for and obtained a search warrant for information to track Mr. Hawkins's phone.  Dkt. #40 ("the GPS Warrant").

ORDER – 1

The GPS Warrant was based on a tip from a confidential source ("CS") in late April of 2021 alleging a person "Kendle" was supplying cocaine to Kenneth Lee, who had already been indicted for his connection to the Michael Walker DTO.  Dkt. #40 at ¶ 66.  The CS said Kendle lived in Arizona, rented cars to drive up to the Seattle area a few times a year, and brought kilograms of cocaine with him to distribute to others, including Lee.  *Id.* The CS gave investigators Kendle's phone number.  *Id.*  The Government checked out the number and found it associated with an address listed under "Kendle Hawkins" and another listed under another name but associated with Kendle Hawkins.  *Id.*

In a footnote, the GPS Warrant noted that this CS "has provided credible and reliable information in the past on other investigations" but had "multiple felony convictions involving crimes of violence" as well as "several gross misdemeanor or misdemeanor convictions, which include making false or misleading statements more than five years ago."  *Id.* at 27 n.12. Apparently this CS had been a paid informant for the Seattle Police Department for over five years and "has not been closed for cause by any other law enforcement agency."  *Id.*  No further details about this CS, this tip, or Mr. Hawkins were provided.

Two days after this first warrant was issued, GPS data showed the phone travelling from Phoenix, Arizona to Seattle by air.  Dkt. #41, ¶ 22. After observing more travels from Phoenix to Sacramento, California and up I-5, the Government applied for a warrant to use a cell-site simulator to find the car being used.  That warrant was granted on June 14, 2021, by a different magistrate judge.  Dkt. #55-1 ("The CSS Warrant").

On June 14, 2021, agents observed Mr. Hawkins traveling northbound on I-5 in a rental car; a Centralia, Washington police officer pulled over the vehicle for going 78 in a 70-mph zone. Dkt. #43 at 1–2.  This traffic stop was based on "the speeding infraction and the independent

ORDER – 2

probable cause developed by agents from CS information, GPS location data for [Defendant's phone], and physical surveillance." *Id.* Defendant Hawkins was in the passenger seat. When the driver opened the glove box to get his license, officers observed, in plain view, "a high capacity drum magazine." *Id*. The officers asked about the reasons for the trip from Arizona to Washington. Eventually they brought in a drug-sniffing dog who alerted on the passenger side of the vehicle. This dog was certified for detecting cocaine, heroin, and methamphetamine. *Id*. at 3. Agents obtained a search warrant, searched the vehicle, and found several guns and tens of thousands of light blue "M-30" pills, later determined to be more than four kilograms of fentanyl.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and requires that a search warrant issue only upon a finding of probable cause. U.S. Const. Amend. IV. The standard of review to be applied by judicial officers in reviewing and approving search warrants is set forth in *Illinois v Gates,* 462 U.S. 213, 103 S. Ct. 2317 (1983), which held that probable cause is a "practical, non-technical conception." 462 U.S. at 232. Furthermore, "[t]he task of the issuing [judicial officer] is simply to make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit. . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id* at 238. In making this determination, the judicial officer is entitled to draw "reasonable inferences" based upon the information set forth in the affidavit. *Id* at 241. Further, the judicial officer is entitled to "rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *United States v. Fannin*, 817 F.2nd 1379, 1382 (9th Cir. 1987). Additionally, as stated by the Ninth Circuit in *United States v. Terry*, 911 F.2nd 272, 275 (9th Cir. 1990):

> A magistrate is permitted to draw reasonable inferences about where
> evidence is likely to be kept based on the nature of the evidence and

> the type of offense . . . He need not determine that the evidence sought is in fact on the premises to be searched . . . or that the evidence is more likely than not to be found where the search takes place . . . The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.

Once made, the probable cause determination is entitled to "great deference" by reviewing courts.  *United States v. Alexander*, 761 F.2nd 1294, 1300 (9th Cir. 1985).  When evidence of probable cause is lacking, the court's remedy is to suppress any evidence seized, unless the officers relying on the warrant can show good faith.  *United States v. Leon*, 468 U.S. 897, 903 (1984).

The Court agrees with Mr. Hawkins that the information provided to the magistrate judge for the initial GPS warrant was too thin and insufficiently reliable.  *See* Dkt. #39 at 15.  No evidence was provided connecting Mr. Hawkins to the DTO other than the CS tip, and nothing corroborated this tip other than the fact that the phone number was indeed connected to Mr. Hawkins.  It is not clear that the tip was based on firsthand knowledge, and it was not sufficiently detailed to describe when, where, with whom, and in what quantity some future drug transaction might occur.  The Court also generally agrees with Defendant that the timing of the warrant reduced the chance of finding contraband or evidence of a crime because Kenneth Lee had already been arrested and indicted before the tip.

However, this does not mean the evidence at issue must be suppressed because there was a valid independent basis for the traffic stop and subsequent search.

An investigatory stop of a car requires only reasonable suspicion. *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006).  The reasonable duration of a traffic stop depends on the stop's "mission."  *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  Officers need no additional reasonable suspicion to conduct tasks consistent with the stop's mission and address

ORDER – 4

any related safety issues.  *Id*. at 354–55; *United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015).  Police may extend a traffic stop if reasonable suspicion supports the extension. *Rodriguez*, 575 U.S. at 358; *Evans*, 786 F.3d at 786.  "The reasonable-suspicion standard is not a particularly high threshold to reach."  *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc).  It "falls considerably short of satisfying a preponderance of the evidence standard," *United States v. Arvizu*, 534 U.S. 266, 274 (2002), and is "'obviously less'" than probable cause, *Navarette v. California*, 572 U.S. 393, 397 (2014) (citation omitted).

The traffic stop for speeding is not questioned by Defendant.  Shortly after the stop, officers applied a K-9 to the exterior of the car to determine whether the odor of drugs was present.  Mr. Hawkins does not dispute that such an alert can create probable cause for a search. *See Florida v. Harris*, 568 U.S. 237, 248 (2013).  To put it all together:  the traffic stop was valid, the officers on the scene had reasonable suspicion of a crime, they extended the stop consistent with their larger mission (which was not invalidated by the lack of probable cause for the GPS warrant), and after the dog alerted they had probable cause to conduct the subsequent search. Suppression is not warranted.

Furthermore, the Court agrees that "[e]ven if there were flaws in the GPS warrant or subsequent warrants that undermine these three magistrates' findings of probable cause, the *Leon* good-faith exception would apply."  Dkt. #54 at 29 (citing, 468 U.S. at 920–21).  Under *Leon*, evidence is admissible if police obtained it in "objectively reasonable reliance" on a search warrant, even if a reviewing court later invalidates the warrant.  *Leon*, 468 U.S. at 922.  "When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time."  *Id*. at 924.  *Leon*'s good-faith exception applies in all but four circumstances: (1) when the warrant is "so facially

deficient" that no executing officer could reasonably presume it to be valid; (2) when the warrant results from recklessly or knowingly misleading the issuing judge; (3) when the affidavit supporting the warrant is "bare bones"; and (4) when the issuing judge "wholly abandons his or her judicial role." *Id.* at 922–23. None of those circumstances apply to the warrants here.

Given the above, a Franks hearing to determine probable cause for the GPS warrant or any other search warrant is unnecessary.

Having reviewed the briefing for this Motion, along with the remainder of the record, the Court hereby finds and ORDERS that Defendant's Motion to Suppress, Dkt. #39, is DENIED.

DATED this 20th day of July, 2022.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 6