UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR21-5213RSM |
| Plaintiff | |
| v. | ORDER DENYING MOTION TO COMPEL INTERVIEW OF CONFIDENTIAL SOURCE |
| KENDLE RASHEN HAWKINS, | |
| Defendant. | |

This matter comes before the Court on Defendant Hawkins's "Motion to Compel Interview of Confidential Source," Dkt. #107.  The Government has responded, Dkt. #108, and Mr. Hawkins has submitted a Reply, Dkt. #109.

Mr. Hawkins has been charged in a Superseding Indictment with Possession of Fentanyl with Intent to Distribute and Felon in Possession of a Firearm.  Dkt. #44.  Although his is a stand-alone indictment, this case is related to those brought against approximately 39 other Defendants under 13 different cause numbers.  *See* Dkts. #21, 31, and 34.  Trial is scheduled for July 15, 2024.  Dkt. #100.

In 2019, the FBI and Seattle Police Department began investigating a drug trafficking organization ("DTO") allegedly controlled by an individual named Michael Walker within the Western District of Washington.  On May 20, 2021, FBI Special Agent Shawna McCann applied

ORDER DENYING MOTION TO COMPEL INTERVIEW – 1

for and obtained a search warrant for information to track Mr. Hawkins's phone.  Dkt. #40.  This warrant was based on a tip from a confidential source ("CS") in late April of 2021 alleging a person "Kendle" was supplying cocaine to Kenneth Lee, who had already been indicted for his connection to the Michael Walker DTO.  Dkt. #40 at ¶ 66.  The CS said Kendle lived in Arizona, rented cars to drive up to the Seattle area a few times a year, and brought kilograms of cocaine with him to distribute to others, including Lee.  *Id.*  The CS gave investigators Kendle's phone number.  *Id.*  The Government checked out the number and found it associated with an address listed under "Kendle Hawkins" and another listed under another name but associated with Kendle Hawkins.  *Id.*

In a footnote, the Warrant noted that this CS "has provided credible and reliable information in the past on other investigations" but had "multiple felony convictions involving crimes of violence" as well as "several gross misdemeanor or misdemeanor convictions, which include making false or misleading statements more than five years ago."  *Id.* at 27 n.12.  Apparently, this CS had been a paid informant for the Seattle Police Department for over five years and "has not been closed for cause by any other law enforcement agency."  *Id.*  No further details about this CS, this tip, or Mr. Hawkins were provided.

Two days after this first warrant was issued, GPS data showed the phone travelling from Phoenix, Arizona to Seattle by air.  Dkt. #41, ¶ 22. After observing more travels from Phoenix to Sacramento, California and up I-5, the Government applied for a warrant to use a cell-site simulator to find the car being used.

On June 14, 2021, agents observed Mr. Hawkins traveling northbound on I-5 in a rental car; a Centralia, Washington police officer pulled over the vehicle for going 78 in a 70-mph zone.  Dkt. #43 at 1–2.  This traffic stop was based on "the speeding infraction and the independent

ORDER DENYING MOTION TO COMPEL INTERVIEW – 2

probable cause developed by agents from CS information, GPS location data for [Defendant's phone], and physical surveillance." *Id.*  Defendant Hawkins was in the passenger seat.  When the driver opened the glove box to get his license, officers observed, in plain view, "a high capacity drum magazine." *Id*.  The officers asked about the reasons for the trip from Arizona to Washington.  Eventually they brought in a drug-sniffing dog who alerted on the passenger side of the vehicle.  This dog was certified for detecting cocaine, heroin, and methamphetamine. *Id*. at 3.  Agents obtained a search warrant, searched the vehicle, and found several guns and tens of thousands of light blue "M-30" pulls, later determined to be more than four kilograms of fentanyl.

Defendant now moves for an order compelling the interview of the CS above.  He believes that the CS might have both inculpatory and exculpatory information.  Dkt. #107 at 2.  The Government has denied the request and said that this person will not be a witness at trial. *Id.*

The United States possesses a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957).  However, that privilege is a qualified one. *Id*. at 62.  In determining whether to compel disclosure, courts must balance "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*; *accord United States v. Napier*, 436 F.3d 1133, 1137-38 (9th Cir. 2006).  These factors most often involve the relationship between the asserted defenses and the expected testimony of the informant—which usually rests on the degree of the informant's involvement in the crime—and the government's interest in protecting the informant's safety. *United States v. Wong*, 886 F.2d 252, 255–56 (9th Cir. 1989).  The burden of proof lies with the defendant to show that disclosure is warranted despite the privilege. *Id.* at 256.  "[M]ere suspicion that

information will prove helpful is insufficient to require disclosure." *Id.*; *see also United States v. Henderson*, 241 F.3d 638, 645 (9th Cir. 2000).

Defendant first argues that he is entitled to an interview of the CS under *Brady v. Maryland*, 373 U.S. 83 (1963) and due process.  Dkt. #107 at 2.  He then cites to the ABA Criminal Justice Standards – Defense Function, 4th ed. (2017) for the duty of defense counsel to investigate.  *Id.* at 2–3.  Defendant then ends his Motion by stating, "[b]ecause the information regarding the CS is so skimpy and the information attributed to the CS is even less, the defense is unable to fully articulate what exculpatory information that could be gleaned from the CS. Mr. Hawkins has a right to know what information the CS gave to the government and what information the CS has that is both exculpatory and material to his defense." *Id.* at 3.

In Response, the Government reiterates that it is not calling this person as a witness and states that the case can be presented without any evidence from the CS.  *See* Dkt. #108 at 5–6 ("the government does not intend to call the CS at trial or reference information provided by that person; the CS simply has nothing to offer that is relevant to the facts supporting the charges"). The Government argues that Defendant's brief "falls far short of what is necessary to obtain the identity of an informant" because it does not explain how the information is essential to a fair determination of a cause, he does not tender a possible defense, he does not discuss the possible significance of the informer's testimony, and merely claims that the CS "might" have useful information.  *Id.* at 5.  The Government discusses the need for effective law enforcement and the safety of this CS given the large scale of the DTO at issue here.  *Id.* at 6.  The Government points out that this person also has a right to decline any interview and the Court cannot compel an interview under these circumstances.  *Id.* at 7–8.

ORDER DENYING MOTION TO COMPEL INTERVIEW – 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

The Court agrees that Defendant has failed to meet the above standards for compelling an interview. Unlike in many cases cited by the parties, it does not appear that any evidence from this witness will be used at trial, and the issue of how this witness's information led to the search of Defendant's vehicle has already been dealt with by the Court in Orders denying two previous Motions to suppress. *See* Dkts. #64 and #85. The burden is on Defendant to show that disclosure is warranted despite the privilege, and his Motion only speculates that something exculpatory might be revealed by such an interview. The Government's interest in protecting this witness clearly outweighs this need. On Reply, Defendant states that the CS's "identity and Mr. Hawkins' ability to assess his credibility is relevant to his testing the evidence against him." Dkt. # 109 at 3. However, the jury need not find the CS credible because the CS will not be testifying and because the Government will be relying instead on evidence of drugs and guns discovered after a lawful stop for speeding and the application of a drug-sniffing dog. *See* Dkts. #64 and #85. As the Court understands it, this evidence will be admissible regardless of the credibility of the CS. Defendant fails to convince the Court to the contrary. Defendant's curiosity as to how this CS knew him or his phone number, *see* Dkt. #109 at 2–3, is not enough to overcome the informer's privilege.

Accordingly, having reviewed the briefing for this Motion, along with the remainder of the record, the Court hereby finds and ORDERS that Defendant Hawkins's "Motion to Compel Interview of Confidential Source," Dkt. #107, is DENIED.

DATED this 29th day of May, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE